IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 603 |
| | ) | Judge Kendall |
| TYRONE JOHNSON, | ) | |
| Defendant. | ) | |

## NOTICE OF FILING

TO:   Andrew Dixon
       Assistant United States Attorney
       219 S. Dearborn St., 5th Floor
       Chicago, Illinois 60604

       **PLEASE TAKE NOTICE** that on this 4h day of December, 2018, the undersigned filed the following document(s) in the above-captioned cause, a copy of which is attached hereto.

-   **TYRONE JOHNSON'S MOTION TO SUPPRESS**

                                        Respectfully submitted,

                                        FEDERAL DEFENDER PROGRAM
                                        John F. Murphy
                                        Executive Director

                                        By: *s/ Imani Chiphe*
                                             Imani Chiphe
                                             Attorney for Defendant

IMANI CHIPHE
Federal Defender Program
55 E. Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-2029

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 603 |
| | ) | Judge Kendall |
| TYRONE JOHNSON, | ) | |
| Defendant. | ) | |

## TYRONE JOHNSON'S MOTION TO SUPPRESS

TYRONE JOHNSON, by the Federal Defender Program and its attorney,

IMANI CHIPHE, respectfully submits this motion to suppress and asks that the

Court enter an order precluding the government from introducing into evidence

firearms seized from the car Mr. Johnson was driving, and further prohibit the

admission of any statements made by Mr. Johnson following his seizure and

arrest. In support of this motion, Mr. Johnson states the following:

### I.    Introduction

Mr. Johnson is currently charged in a one-count indictment for his alleged

possession of a firearm that was in and affecting commerce on November 20,

2016, after having been previously convicted of a felony, in violation of 18 U.S.C.

§ 922(g).  On the night of November 20, 2016, Mr. Johnson and a passenger were

driving northbound on N. Laramie Ave. Mr. Johnson was driving a silver

1

Hyundai sedan.  While driving he noticed what he believed to be an unmarked police car following him. The unmarked car was driven by Chicago Police Officers Brian Murphy and Scott Liedtk.  Mr. Johnson turned onto West End Ave., and the unmarked sedan followed. He then turned onto N. Lemington Ave. N. Lemington is a one-way street going south.  The Officers' continuing to follow Mr. Johnson turned on to N. Lemington as well. After turning on to N. Lemington Mr. Johnson pulled over and parked his car to let his passenger out. Moments after his passenger got out of his car the Officers pulled alongside Mr. Johnson's car blocking him in. By blocking his car the Officers prevented Mr. Johnson from pulling out of his parking space because there was a car parked directly in front of him.  After blocking him in the Officers directed Mr. Johnson to roll down his window. Mr. Johnson did as he was directed and rolled down his window. The Officers questioned him, asking him what he was doing and did he have a drivers' license. Mr. Johnson told the Officers that he did have a drivers' license, and that he had just dropped off his passenger and was going home. Because the Officer's car was blocking his car Mr. Johnson was prohibited from leaving and felt required to answer the officers' questions.

After Mr. Johnson answered the Officers' questions Officer Liedkt got out of his car and approached the building Mr. Johnson's passenger was now entering. The building had a glass door and the Officer could see Mr. Johnson's

2

passenger but did not enter the apartment building. Instead he walked back to Mr. Johnson's car and withdrew his firearm and ordered Mr. Johnson out of the car. Officer Murphy, who was driving the unmarked car, got out and drew his firearm as well.

Mr. Johnson was able to maneuver his car in reverse and pull out of his parking space backwards. He drove north on Lemington Ave. in reverse. The officers pursued in their car. Ultimately Mr. Johnson stopped his car and surrendered to the Officers and was placed under arrest. Sometime after his surrender and arrest, handguns were allegedly found in the car Mr. Johnson was driving.

On September 13, 2017, Mr. Johnson was charged with a one count indictment for violating 18 U.S.C. § 922(g)(1). He has pled not guilty to the charge.

Mr. Johnson asserts that the Officers' action of parking their car alongside Mr. Johnson's car, in a manner that blocked him in, and prevented him from driving forward or leaving in an ordinary manner was an unlawful *Terry* stop. Thus the firearms seized from his car, as well as any statements he allegedly made following his detention and arrest, should be suppressed from evidence.

## II. The Officers lacked the requisite reasonable suspicion to subject Mr. Johnson to an investigatory stop.

It is well-settled that the Fourth Amendment's prohibition on "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273 (2002); *Terry v. Ohio,* 392 U.S. 1, 16 (1968). Put differently, the protections of the Fourth Amendment are invoked at the moment when a suspect is "seized" or stopped by the police, even when that seizure falls short of an arrest. *Brendlin v. California,* 551 U.S. 249, 263 (2007).

The test for determining at what point a police encounter with a suspect ripens into an investigative detention or into a seizure involves "taking into account all of the circumstances surrounding the encounter," and asking whether the "police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629 (2003); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (person is "seized" within meaning of Fourth Amendment when, in view of all the circumstances, a "reasonable person would have believed that he was not free to leave").

Law enforcement must have a sufficient evidentiary basis to effectuate such a stop, even though the "investigative detention" is not, strictly speaking, an arrest. Under *Terry*, "a police officer may in appropriate circumstances and in

4

an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. As pertinent here, *Terry*'s actual holding was "where a police officer observes unusual conduct which leads him reasonably to conclude that criminal activity may be afoot ..." a brief stop is permissible. *Id.* at 30. But, such a stop must be based on "based on objective facts" that form the foundation of the officer's conclusion that criminal activity must be taking place. *Brown v. Texas*, 443 U.S. 47, 49-52 (1979)(finding violation of Fourth Amendment when officers observed two men standing close to one another in an alley located in a neighborhood known for drug trafficking; "[w]hen the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment.")).

As with almost all Fourth Amendment analysis, the Court is left with a heavily fact dependent inquiry. What the officers and suspects say and do, how they appear, the circumstances of the officer's approach to the suspect,  and other details related to when and where the stop take place, all factor into the Court's analysis of whether an investigatory stop occurred and whether the officer had the requisite objective reasonable suspicion to effectuate the stop.

Under the circumstances of this case, it is clear that Mr. Johnson was subjected to an investigatory (*Terry*) stop, when the Officers approached Mr.

5

Johnson car, blocked him in, prevented him from leaving in an ordinary manner and questioned him about what he was doing and did he have a driver's license.

The Officers lacked the reasonable suspicion required to effectuate such a stop. There is no claim made by the Officers in this case that they had an objective reasonable suspicion that Mr. Johnson was committing a crime or doing any illegal. As *Terry* demands the Officers did not observe unusual conduct which led them to reasonably conclude that criminal activity may be afoot. In fact, the only thing Mr. Johnson was doing was dropping off his friend and getting ready to drive home. The Officers detention prevented that.

Stated simply, there was nothing unusual about Mr. Johnson's conduct that would allow the Officers to conclude that criminal activity may be afoot. As a result, the investigatory detention of Mr. Johnson ran afoul of the Fourth Amendment and any evidence obtained as a result of the stop should be suppressed.

## III.   Conclusion

For the reasons outlined above, Mr. Johnson respectfully requests that this Court enter an order finding that Mr. Johnson was subjected to an unlawful investigatory stop. Mr. Johnson further requests that the Court suppress the firearms recovered from the car he was driving and any statements he allegedly made during his detention and arrest.

In the alternative, Mr. Johnson requests that this Court hold an evidentiary hearing on the matter. Mr. Johnson also respectfully seeks leave to file additional points of law or memoranda upon receipt of additional information.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: _s/ Imani Chiphe_
    Imani Chiphe

IMANI CHIPHE
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-2029

7

## CERTIFICATE OF SERVICE

The undersigned, <u>Imani Chiphe</u>, attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## TYRONE JOHNSON'S MOTION TO SUPPRESS

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>December 4, 2018</u>, to counsel/parties that are non-ECF filers.

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: *s/Imani Chiphe*
Imani Chiphe

IMANI CHIPHE
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL   60603
(312) 621-2029