IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 603 |
| | ) | Judge Kendall |
| TYRONE JOHNSON, | ) | |
| Defendant. | ) | |

### NOTICE OF FILING

TO:  Andrew J. Dixon
　　　Assistant United States Attorney
　　　219 S. Dearborn St., 5th Floor
　　　Chicago, Illinois 60604

　　　**PLEASE TAKE NOTICE** that on this 12th day of March, 2019, the undersigned filed the following document(s) in the above-captioned cause, a copy of which is attached hereto.

- **TYRONE JOHNSON'S POST HEARING POSITION PAPER**

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　FEDERAL DEFENDER PROGRAM
　　　　　　　　　　　　　　　　John F. Murphy
　　　　　　　　　　　　　　　　Executive Director

　　　　　　　　　　　　　　By:  *s/ Imani Chiphe*
　　　　　　　　　　　　　　　　Imani Chiphe
　　　　　　　　　　　　　　　　Attorney for Defendant

IMANI CHIPHE
Federal Defender Program
55 E. Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8300

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 603 |
| | ) | Judge Kendall |
| TYRONE JOHNSON, | ) | |
|     Defendant. | ) | |

**TYRONE JOHNSON'S POST HEARING POSITION PAPER**

TYRONE JOHNSON, by the Federal Defender Program and its attorney, IMANI CHIPHE, respectfully submits his position paper regarding his motion requesting that the Court enter an order precluding the government from introducing into evidence firearms seized from the car Mr. Johnson was driving, and further prohibit the admission of any statements made by Mr. Johnson following his seizure and arrest. In support of this motion, Mr. Johnson states the following:

I. **Factual Background**

Despite the government's claim to the contrary the testimony during the suppression hearing establish that Mr. Johnson was the subject of an

1

investigatory (Terry) stop, without the required reasonable suspicion to effectuate such a stop. (Dkt # 57, Gov't Position Paper).

On the night of November 20, 2016, Mr. Johnson was driving northbound on N. Laramie Ave. Mr. Johnson was driving a silver Hyundai sedan. While driving he noticed what he believed to be an unmarked police car following him. The unmarked car was driven by Chicago Police Officers Brian Murphy and Scott Liedtk.[1] Mr. Johnson turned onto West End Ave., and the unmarked sedan followed. He then turned onto N. Lemington Ave. N. Lemington is a one-way street going south. Tr. 13-14, 36. The officers continuing followed Mr. Johnson onto N. Lemington. After turning on to N. Lemington Mr. Johnson pulled his car over next to a fire hydrant. Tr. 37. There was a car parked in front of Mr. Johnson's car. The officers then testified that there were no cars parked behind Mr. Johnson and that he passed up legal parking spaces to park next to the fire hydrant. Tr. 37-39. The officer stated that they pulled up next to Mr. Johnson's car. Tr. 39. Their car was close enough to Mr. Johnson's car that they were able to question him without getting out. Consequently, Mr. Johnson was unable to drive forward out of his parking space because there was a car parked directly in

---

[1] References to the Suppression Hearing transcript will be designated as "Tr." followed by the page number.

front of him, and the officers' car parked directly to the side of him. Tr. 39-40. In addition, logic dictates that there were cars parked behind him. Otherwise, he would not have parked next to the hydrant to begin with. After blocking Mr. Johnson in the officers directed Mr. Johnson to roll down his window. Mr. Johnson did as he was directed and rolled down his window. The officers questioned him, asking him what he was doing and did he have a drivers' license. Tr. 40, 62. Mr. Johnson told the officers that he did have a drivers' license. Because the officer's car was blocking his car Mr. Johnson was prohibited from leaving in an ordinary manner and felt required to answer the officers' questions.

Despite being boxed in Mr. Johnson was able to maneuver his car in reverse and pull out of his parking space backwards. He drove north on Lemington Ave. in reverse. The officers pursued in their car. Ultimately Mr. Johnson stopped his car and surrendered to the officers and was placed under arrest. Sometime after his surrender and arrest, handguns were allegedly found in the car Mr. Johnson was driving.

Mr. Johnson asserts that the officers' action of parking their car alongside his car, in a manner that blocked him in, and prevented him from driving forward or leaving in an ordinary manner was an unlawful *Terry* stop. Thus the

3

firearms seized from his car, as well as any statements he allegedly made following his detention and arrest, should be suppressed from evidence.

## II. The officers' testimony supports that they lacked the requisite reasonable suspicion to subject Mr. Johnson to an investigatory stop.

The officers' testimony that Mr. Johnson passed up legal parking spaces to park "illegally" next to a fire hydrant is not credible. It is far more plausible that Mr. Johnson pulled his car next to the fire hydrant because there was no other spaces available. The officers pulled up next to him blocking him in. Therefore, making it difficult for him to leave in an ordinary manner.

It is well-settled that the Fourth Amendment's prohibition on "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Terry v. Ohio*, 392 U.S. 1, 16 (1968). Put differently, the protections of the Fourth Amendment are invoked at the moment when a suspect is "seized" or stopped by the police, even when that seizure falls short of an arrest. *Brendlin v. California*, 551 U.S. 249, 263 (2007).

The test for determining at what point a police encounter with a suspect ripens into an investigative detention or into a seizure involves "taking into account all of the circumstances surrounding the encounter," and asking whether

4

the "police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629 (2003); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (person is "seized" within meaning of Fourth Amendment when, in view of all the circumstances, a "reasonable person would have believed that he was not free to leave").

Law enforcement must have a sufficient evidentiary basis to effectuate such a stop, even though the "investigative detention" is not, strictly speaking an arrest. Under *Terry*, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. As pertinent here, *Terry*'s actual holding was "where a police officer observes unusual conduct which leads him reasonably to conclude that criminal activity may be afoot ..." a brief stop is permissible. *Id.* at 30. But, such a stop must be based on "based on objective facts" that form the foundation of the officer's conclusion that criminal activity must be taking place. *Brown v. Texas*, 443 U.S. 47, 49-52 (1979)(finding violation of Fourth Amendment when officers observed two men standing close to one another in an alley located in a neighborhood known for drug trafficking; "[w]hen the officers detained

5

appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment.")).

As with almost all Fourth Amendment analysis, the Court is left with a heavily fact dependent inquiry. What the officers and suspects say and do, how they appear, the circumstances of the officer's approach to the suspect, and other details related to when and where the stop take place, all factor into the Court's analysis of whether an investigatory stop occurred and whether the officer had the requisite objective reasonable suspicion to effectuate the stop.

Here, the officers testified that they followed Mr. Johnson's car for approximately ten blocks. That he then pulled his car over next to a fire hydrant. That there was a car parked directly in front of Mr. Johnson car. After Mr. Johnson stopped his car the officers pulled their car alongside Mr. Johnson's car. Finally, the officers testify that in parking next to the fire hydrant Mr. Johnson passed up open legal parking spaces. The officers' testimony on this last point is neither credible nor plausible. It is much more credible that Mr. Johnson pulled next to the fire hydrant because it was the only space available. Mr. Johnson was subjected to an investigatory (*Terry*) stop, when the officers parked their car next to him blocking him in. Thus, prevented him from leaving in an ordinary manner.

6

The officers lacked the reasonable suspicion required to effectuate such a stop. There is no credible claim made by the officers in this case that they had an objective reasonable suspicion that Mr. Johnson was committing a crime or doing anything illegal. As *Terry* demands the officers did not observe unusual conduct which led them to reasonably conclude that criminal activity may be afoot. In fact, the only thing Mr. Johnson was doing was dropping off his friend and getting ready to drive home. The officers' detention prevented that.

Stated simply, there was nothing unusual about Mr. Johnson's conduct that would allow the officers to conclude that criminal activity may be afoot. As a result, the investigatory detention of Mr. Johnson ran afoul of the Fourth Amendment and any evidence obtained as a result of the stop should be suppressed.

**III.     Since Mr. Johnson did not park in front of the fire hydrant, he did not violate the Chicago Municipal Code, and therefore did not provide the officers with reasonable suspicion to conduct an investigatory stop.**

In Part II of its position paper and during the suppression hearing the Government argues that it established that Mr. Johnson parked his car in front of the fire hydrant. Thus, committing a Chicago Municipal Code violation. Tr. 15. Parking in front of a fire hydrant would indeed be a violation of the Chicago

Municipal Code and would have given the Officers reasonable suspicion to conduct an investigatory stop of Mr. Johnson. However, Mr. Johnson did not "park" his car it was only "standing" in front of a fire hydrant. *Chicago Mun. Code § 9-64-100(a)*.

The evidence and testimony during the hearing established that Mr. Johnson never left his car while the car was parked next to the fire hydrant. Tr. at 18, 62-63. In fact, there is no evidence that Mr. Johnson ever turned the car engine off.

In the Chicago Municipal Code, parking is defined as "the standing of an *unoccupied* vehicle" (emphasis added) while "standing" is defined as "the halting of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in receiving or discharging passengers; provided, that, an operator is either in the vehicle or in the immediate vicinity, so as to be capable of immediately moving the vehicle at the direction of a police officer or traffic control aide." *Chicago Mun. Code § 9-04-010.*

The key word is "unoccupied." For a car to be parked, the car must be unoccupied. Since the Government has established that Mr. Johnson never left his car unoccupied while it was next to the fire hydrant, Mr. Johnson therefore never parked his car in front of the fire hydrant. Mr. Johnson's car was merely *standing* next to the fire hydrant.

8

The Chicago Municipal Code says it is unlawful to park in front of a fire hydrant, but does not say it is unlawful for a car to stand next to a fire hydrant. Chicago Municipal Code § 9-64-100(a). This cannot be considered an oversight either, because other sections, such as the section dealing with crosswalks, expressly prohibit both standing and parking in a crosswalk. *Id. At § 9-64-110*. Since Mr. Johnson's car was only standing in front of the fire hydrant, he was not violating the Chicago Municipal Code, and the officers therefore did not have reasonable suspicion to conduct an investigatory stop.

## IV. Conclusion

For the reasons outlined above, Mr. Johnson respectfully requests that this Court enter an order finding that he was subjected to an unlawful investigatory stop. Mr. Johnson further requests that the Court suppress the firearms recovered from the car he was driving and any statements he allegedly made during his detention and arrest.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: *s/ Imani Chiphe*
    Imani Chiphe

IMANI CHIPHE
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8300

## **CERTIFICATE OF SERVICE**

The undersigned, <u>Imani Chiphe</u>, attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**TYRONE JOHNSON'S POST HEARING POSITION PAPER**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>March 12, 2019</u>, to counsel/parties that are non-ECF filers.

                                       FEDERAL DEFENDER PROGRAM
                                       John F. Murphy
                                       Executive Director

                                       By: <u>*s/Imani Chiphe*</u>
                                            Imani Chiphe

IMANI CHIPHE
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8300